1  DOUGLAS J. FARMER, Cal. Bar No. 139646
   douglas.farmer@ogletree.com
2  LAUREN COOPER, Cal. Bar No. 254580
   lauren.cooper@ogletree.com
3  SEAN M. KRAMER, Cal. Bar No. 293850
   sean.kramer@ogletree.com
4  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
   Steuart Tower, Suite 1300
5  One Market Plaza
   San Francisco, CA  94105
6  Telephone:   415.442.4810
   Facsimile:    415.442.4870
7
   Attorneys for Defendant
8  IKEA U.S. RETAIL, LLC

9
                    **UNITED STATES DISTRICT COURT**
10
                    **CENTRAL DISTRICT OF CALIFORNIA**
11

12
| ALLYZA CAHILIG, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>IKEA U.S. RETAIL, LLC, a Virginia limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT IKEA U.S. RETAIL, LLC'S NOTICE OF REMOVAL OF ACTION PURSUANT TO §§ 1332(D)(2), 1367, 1441, 1446, 1453**<br><br>[Los Angeles County Superior Court Case No.: 19STCV00676]<br><br>[*Filed Concurrently with Supporting Declaration of Sonja Freeney; Corporate Disclosure Statement and Certificate of Interested Parties; and Civil Cover Sheet.*]<br><br>Complaint Filed:  January 10, 2019<br>Trial Date:           None Set |
|---|---|

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant IKEA U.S. Retail, LLC ("IKEA") hereby removes the above-entitled action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, under the Class Action Fairness Act ("CAFA"), pursuant to 28 U.S.C. §§ 1332(d)(2), 1446 and 1453, and under 28 U.S.C. § 1367. IKEA does so on the grounds that the Court has original jurisdiction over Plaintiff's class claims under CAFA because: (1) there are at least 100 putative class members in plaintiff Allyza Cahilig's ("Plaintiff") five purported classes; (2) the amount in controversy exceeds the jurisdictional minimum of $5,000,000, exclusive of interest and costs; and (3) diversity of citizenship exists between Plaintiff and IKEA. In addition, removal of Plaintiff's Private Attorneys General Act ("PAGA") claim is proper as the Court has supplemental jurisdiction over the PAGA claim pursuant to 28 U.S.C. § 1367. The foregoing facts were true when Plaintiff filed the Complaint, and remain true now.

Removal jurisdiction is therefore appropriate under CAFA and 28 U.S.C. § 1367 as alleged in detail below.

I.  **THE STATE COURT ACTION**

1. On January 10, 2019, Plaintiff filed an unverified Complaint in the Superior Court of California, County of Los Angeles, commencing the action entitled *Allyza Cahilig, on behalf of herself and all others similarly situated v. IKEA U.S. Retail, LLC, and Does 1 through 100, inclusive,* Case Number 19STCV00676 ("Complaint"). A true and correct copy of the Complaint is attached as **Exhibit A** to this Notice of Removal ("Notice"). The Complaint alleges six causes of action: (1) Failure to Provide All Paid Rest Periods; (2) Violations of Labor Code § 203; (3) Derivative Failure to Timely Furnish Accurate Itemized Wage Statements;

(4) Independent Failure to Timely Furnish Accurate Itemized Wage Statements; (5) Penalties pursuant to the Labor Code § 2699 (PAGA); and (6) Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, et seq.).

2. IKEA's registered agent for service of process was served with the Summons and Complaint on January 16, 2019. A true and correct copy of the documents served on IKEA's registered agent for service of process are attached to this Notice as **Exhibit B.**

3. On February 14, 2019, IKEA timely filed its Answer in Los Angeles County Superior Court. A true and correct copy of IKEA's Answer to the Complaint is attached to this Notice as **Exhibit C**.

## II.  VENUE

4. The Superior Court of California, County of Los Angeles, is located within the territory of the Central District of California. Therefore, venue for the purposes of removal is proper pursuant to 28 U.S.C. § 84(c)(2) because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## III.  IKEA HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

### A.  Timeliness

5. A defendant in a civil action has thirty (30) days from the date it is served with a summons and complaint in which to remove the action to federal court. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). As IKEA's registered agent for service of process was served with the Summons and Complaint on January 16, 2019, this Notice of Removal is timely. 28 U.S.C. § 1446(b).

### B.  Procedural Requirements

6. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and

1  orders served upon IKEA are exhibits to this Notice. Pursuant to 28 U.S.C.
2  § 1446(d), a "Notice to Plaintiff and Clerk of the California Superior Court of
3  Removal of Civil Action to United States District Court" (to include a copy of this
4  Notice of Removal and all Exhibits) will be promptly filed with the Clerk of the
5  Superior Court for the County of Los Angeles, and served on all other parties to this
6  action.

7        7.    As required by Federal Rule of Civil Procedure 7.1 and Local Rule 7.1-
8  1, IKEA concurrently filed its Certificate of Interested Parties.

## IV. THE CLASS CLAIMS ARE REMOVABLE PURSUANT TO THE CLASS ACTION FAIRNESS ACT ("CAFA")

11        8.    The Court has original jurisdiction over Plaintiff's class claims pursuant
12  to CAFA. As such, the claims may be removed to this Court by IKEA pursuant to
13  28 U.S.C. §§ 1332(d)(2), 1446 and 1453.

14        9.    Under CAFA, the Federal District Court has jurisdiction if:

      a)    There are at least 100 class members in all proposed plaintiff classes; and

      b)    The combined claims of all class members exceed $5,000,000 exclusive of interest and costs; and

      c)    Any class member (named or not) is a citizen of a different state than any defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a)

22        10.    In its recent decision in *Dart Cherokee Basin Operating Co. v. Owens,*
23  132 S.Ct. 547 (2014), the U.S. Supreme Court provided significant clarification of
24  the standards applicable to notices of removal in CAFA cases, establishing a much
25  more liberal standard in favor of removing defendants. In *Dart Cherokee,* the U.S.
26  Supreme Court held that a removal must only contain "a short and plain statement of
27  the grounds for removal." *Id.* at 553 (quoting 28 U.S.C. § 1446(a)). The Court
28  noted that this same language is used for the pleading standard in Rule 8(a) of the

Federal Rules of Civil Procedure. *Id.* The use of this language in the removal statute was intentional—clearly indicating that courts should apply the same liberal pleading standards to notices of removal as they should to plaintiffs' complaints and other pleadings. *Id.* The Court further held that a removing defendant need not submit evidence with its pleading that establishes that the elements of federal subject matter jurisdiction are met. *Id.* at 552-53. Only if the court or another party challenges jurisdiction should the court require a removing defendant to prove, under the applicable "preponderance" standard, that the jurisdictional requirements are met. *Id.* at 553-54. The Court summarized its holding as follows: "[i]n sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 554. Also, there is no "presumption against removal" in CAFA cases, because CAFA was specifically enacted by Congress "to facilitate adjudication of certain class actions in federal court." *Id.*

### A.   There Are At Least 100 Class Members In The Proposed Plaintiff Classes

11.   Plaintiff worked as a non-exempt hourly employee for IKEA in Carson, California from August 7, 2013 to August 26, 2018. (Declaration of Sonja Freeney ("Freeney Decl.") ¶ 3; *see also* Complaint at ¶ 7.) Her Complaint is "on behalf of herself and all others similarly situated" and alleges that IKEA violated California wage and hour law by failing to provide her and other non-exempt hourly employees in California with sufficient rest breaks, by providing inaccurate wage statements, and by not paying all wages earned upon separation. (Complaint at ¶¶ 4-5). Based on these alleged violations, Plaintiff seeks to recover rest break premium pay, statutory penalties pursuant to Labor Code §§ 226(e), 558, and 2699 (PAGA), waiting time penalties pursuant to Labor Code § 203, in addition to seeking

declaratory relief, injunctive relief, and restitution under California Business and Professions Code § 17200 *et seq.* ("UCL"), among other things. (Complaint at pp. 24-27, Prayer for Relief.)

12. Plaintiff purports to bring her action on behalf of five different classes (collectively, the "Plaintiff Classes"), including:

1) Rest Period Class: "All California citizens employed by Defendants as hourly-paid employees during the appropriate time period who were subjected to Defendants' policies and practices regarding providing all paid rest periods";

2) LC 203 Class: "All formerly-employed California citizens employed by Defendants as hourly-paid employees during the appropriate time period who were subjected to Defendants' policies and practices regarding Labor Code § 203 and the payment of final wages";

3) Derivative Wage Statement Class: "All California citizens employed by Defendants as hourly-paid employees during the appropriate time period who were derivatively subjected to Defendants' policies and practices regarding itemized wage statements";

4) Independent Wage Statement Class: "All California citizens employed by Defendants as hourly-paid employees during the appropriate time period who were independently subjected to Defendants' policies and procedures regarding itemized wage statements"; and

5) 17200 Class: "All California citizens employed by Defendants as hourly-paid employees during the appropriate time period regarding whom Defendants have engaged in unlawful, unfair and/or fraudulent business acts or practices prohibited by B&PC § 17200, et seq."

(Complaint ¶ 25(a)-(e) (underlining in original).)

13. Plaintiff's Complaint alleges that the "quantity of members of the Classes [i.e., the Plaintiff Classes] is unknown to Plaintiffs at this time; however, it is estimated that the membership of the Classes numbers greater than 100 individuals". (Complaint ¶ 28(c).) Therefore, based on Plaintiff's own allegation, CAFA's 100-person requirement is satisfied. *See Kearney v. Direct Buy Assocs.*, No. CV 14-04965 MMM (AJWx), 2014 U.S. Dist. LEXIS 197527, at *11-13 (C.D. Cal. Oct. 23, 2014) (where plaintiff's complaint plead that putative class contained more than one hundred members, CAFA's 100-person numerosity required was satisfied).

14. Moreover, although Plaintiff's Complaint does not allege any specifics as to the number of persons who meet the proposed five class definitions, IKEA has undertaken for purposes of removal to approximate the number of non-exempt hourly employees it employed in the about one-year period preceding the filing of the Complaint (*i.e.*, 2018 to 2019).[1] Between January 10, 2018 and January 31, 2019, there were at least 3,545 non-exempt hourly employees who worked for IKEA in California. (Freeney Decl. ¶ 4.) Therefore, the number of putative class members in the last over one year alone well exceeds 100 individuals and the first requirement for CAFA jurisdiction is plainly satisfied.

**B.     The Combined Claims Of All Class Members (the "Amount In Controversy") Exceeds $5,000,000**[2]

15. With respect to CAFA's $5,000,000 threshold for the "amount in controversy," it is not the same as the amount ultimately recovered. *Lara v. Trimac*

---

[1] IKEA does not agree or concede that the classes proposed by Plaintiff in her Complaint are proper, nor that Plaintiff's claims are amenable to class treatment. Rather, IKEA provides this data based on the defined proposed Plaintiff Classes for the purposes only of determining the potential class size and monetary recovery for the purposes of removal.

[2] In alleging the amount in controversy for purposes of CAFA removal, IKEA does not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint. Nor does IKEA concede that any or all of the putative class members are entitled to any recovery in this case, or are appropriately included in the putative classes.

*Transp. Servs. Inc.*, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010). Rather, in assessing the amount in controversy, a court must "assume that all the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by Plaintiff's complaint, not what IKEA will actually owe. *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005). In other words, "the amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). "The amount in controversy is determined by the universe of what the plaintiff puts at-issue in the complaint." *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *6 (E.D. Cal. July 14, 2010). To establish the amount in controversy, a defendant "need not concede liability for the entire amount," and it is error for a district court to require such a showing. *Lewis*, 627 F.3d at 400; *see also Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated."); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (stating that "[t]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint," and that the court may also consider summary-judgment-type evidence relevant to the amount in controversy at the time of removal) (citations omitted).

16. Based on the allegations in the Complaint, the alleged amount in controversy for the class claims exceeds, in the aggregate, $5,000,000, as demonstrated below.

17. Plaintiff's First Cause of Action alleges that "as a matter of Defendants' established company policy, Defendants failed to authorize and permit required rest

periods established by Labor Code § 226.7 and Labor Code § 516 and Section 12 of the IWC Wage Order(s)." (Complaint at ¶ 42) (underlining in original).

18. As noted above in Paragraph 15, *supra*, there are at least 3,545 non-exempt hourly employees who worked for IKEA in California between January 10, 2018 (one year prior to the filing of the Complaint) and January 31, 2019.

19. Under California law, employees who are not provided with sufficient rest periods are entitled to one hour of premium pay for each day that a rest period is missed. *See Marlo v. United Parcel Service, Inc.*, No. CV 03-04336 DDP RZX, 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009). Rest period claims are properly considered in determining the amount in controversy. *See, e.g., Muniz v. Pilot Travel Ctr. LLC*, No. CIV. S-07-0325FCDEFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007); *Helm v. Alderwoods Group, Inc.*, No. C 08-01184SI, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).

20. IKEA's calculations for purposes of removal only are based on the following: (1) Plaintiff and the members of the putative Rest Period Class are paid on a bi-weekly basis (Freeney Decl. ¶ 4.); (2) Plaintiff and the members of the putative Rest Period Class worked on average at least four shifts per week, and shifts not fewer than four hours (Freeney Decl. ¶ 4.); and (3) for each bi-weekly pay period, there were at least 4 missed rest breaks.

21. Based on the foregoing, for the period of January 18, 2018 to January 31, 2019 (approximately 27 pay periods), Plaintiff and the putative Rest Period Class collectively allege almost $5,000,000 in rest break penalties alone: *4 missed rest periods during each bi-weekly pay period x $11.00/hour (the 2018 California minimum wage) = $44.00 x 27 pay periods = $1,188 per employee x 3,545 potential Rest Break Class members from January 18, 2018 to January 31, 2019 =* **$4,211,460.**

22. However, Plaintiff also alleges that the failure to provide rest periods constitutes unfair competition within the meaning of the UCL. (Complaint, ¶ 45.)

1  The statute of limitations for claims under the UCL is four years.  Cal. Bus. & Prof.
2  Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter
3  shall be commenced within four years after the cause of action accrued"); *Cortez v.*
4  *Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178-179 (2000) (the four-
5  year statute of limitations applies to any UCL claim, notwithstanding that the
6  underlying claims have shorter statutes of limitation).  Accordingly, the measure of
7  potential damages for rest break claims is based on a four-year limitations period.
8  Given that between the period of January 18, 2018 to January 31, 2019 Plaintiff
9  alleges at least $4,211,460 in controversy in the aggregate, extrapolating that over a
10 four-year period, makes plain that the rest break claim meets the CAFA jurisdiction
11 minimum.

12        23.    Besides Plaintiff's rest break claim, however, Plaintiff also alleges in
13 her Second Cause of Action that IKEA violated California Labor Code § 203 by
14 failing to pay former employees all wages owed to the employee at the end of their
15 employment. (Complaint at ¶¶ 45-51.)  Under Labor Code Section 203, an employer
16 is liable for waiting time penalties in the amount of a day's pay for up to 30 days.
17 The statute of limitations for claims brought under California Labor Code § 203 is
18 three years.

19        24.    Accepting Plaintiff's allegations in the Complaint as true, based on
20 IKEA's calculations, the collective amount in controversy for non-exempt hourly
21 employees in California separated between January 10, 2016 and January 31, 2019
22 (at least 6,000) would easily exceed $5,000,000 million as well.  (*See* Freeney Decl.
23 ¶ 5.)

24        25.    Plaintiff's Third and Fourth Causes of Action allege, respectively, that
25 "[a]s a pattern and practice . . . Defendants did not and still do not furnish each of the
26 members of the Derivative Wage Statement Class with an accurate itemized wage
27 statement in writing showing" and "[a]s a pattern and practice . . . Defendants did not
28 and still do not furnish each of the members of the Independent Wage Statement

Class with an accurate itemized wage statement in writing showing the name and address of the legal entity that is the employer. (Complaint at ¶¶ 56, 68.) The alleged derivative wage statement inaccuracies are based on Plaintiff's claims that she and others did not receive rest break premium pay, and that this premium pay was not, in turn, reflected on the wage statements. (*See* Complaint at ¶ 57.) Thus, under Plaintiff's theory of her wage statement claim, which IKEA denies, each wage statement received by purported class members would have been deficient because it either derivatively did not contain pay showing rest break premiums and/or because it did not show IKEA's correct legal name and address.

26. Pursuant to California Labor Code 226(e), an employee who is injured as a result of the employer's knowing and intentional failure to provide itemized wage statements is entitled to recover the greater of his or her actual damages, or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), in addition to costs and attorney fees. Cal. Lab. Code § 226(e). The statute of limitations for California Labor Code § 226(a) claims is one year. Cal. Code Civ. Proc. § 340(a) (one year state of limitations for penalties).

27. IKEA pays its employees bi-weekly, resulting in 26 pay periods per year. (Freeney Decl. ¶ 4.) Between January 18, 2018 and January 31, 2019, approximately 3,545 individuals worked for IKEA in California as non-exempt hourly employees. During this time period, there were 27 pay periods. Thus, accepting the allegations in Plaintiff's Complaint as true, the amount in controversy from January 10, 2018 to January 31, 2019 under Plaintiff's Third and Fourth Causes of Action could be well in excess of $5,000,000 alone: *1 pay period x $50.00 + 26 pay periods x $100.00 = $2,650.00 x 3,545 potential Derivative and Independent Wage Statement class members from January 18, 2018 to January 31, 2019 =* **$9,394,250**.

28. Moreover, it is also well settled that a court should consider attorneys' fees when considering whether a complaint meets the amount in controversy requirement. *See Goldberg v. C.P.C. Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorneys' fees may be taken into account to determine jurisdictional amounts); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (holding that attorneys' fees must be included in determining the amount in controversy in CAFA removal actions); *Sanchez v. Wal-Mart Stores, Inc.*, 2007 WL 1345706, at *2 (E.D. Cal. May 8, 2007) ("Attorney's fees, if authorized by statute or contract, are also part of the calculation . . ." for CAFA purposes). A reasonable estimation of Plaintiff's attorney fees at 25% of the amount in controversy under Plaintiff's Third through Fourth Causes of Action pushes the total amount in controversy even higher.

29. Accordingly, removal of the class claims in this action is proper under 28 U.S.C. §1332(d).

### C. There is Diversity Between At Least One Class Member and Defendant

30. To find diversity under CAFA, this Court need only find that there is diversity between one putative class member and IKEA. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a). IKEA is a Virginia limited liability company with its principal place of business in Conshohocken, Pennsylvania. (Freeney Decl. ¶ 2.) Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." A corporation's headquarters is presumptively the location of its "principal place of business . . ." *Hertz v. Friend*, 130 S.Ct. 1181, 1192 (2010) ("[I]n practice [a company's principal place of business] should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control and coordination, *i.e.*, the 'nerve center'". . .).

31. Moreover, the citizenship of a limited liability company for diversity

DEFENDANT IKEA U.S. RETAIL, LLC'S NOTICE OF REMOVAL OF ACTION PURSUANT TO §§ 1332(D)(2), 1367, 1441, 1446, 1453

1  jurisdiction purposes is the citizenship of its members.  *See Fadal Machining Ctrs.,*
2  *LLC v. Mid-Atlantic CNC, Inc.*, 464 Fed. Appx. 672, 673 (9th Cir. 2012) ("For
3  purposes of diversity jurisdiction, a limited liability corporation is a citizen of all
4  states where its members are citizens.")*; Johnson v. Columbia Props. Anchorage,*
5  *LP*, 437 F.3d 894, 899 (9th Cir. 2006) (holding that "like a partnership, an LLC is a
6  citizen of every state of which its owners/members are citizens."); *McCawley v.*
7  *Eckert Seamens Cherin & Mellott, LLC*, CV 15-223(PA) (FFMx), 2015 U.S. Dist.
8  LEXIS 3996, at *2-3 (C.D. Cal. Jan. 13, 2015); *Cebrian v. Robert H. Ballard Rehab.*
9  *Hosp.*, ED CV 13-2149 PA (FFMx), 2013 U.S. Dist. LEXIS 173184, at *2-3 (C.D.
10 Cal. Dec. 6, 2013) (collecting cases).

11        32.    IKEA is a limited liability company formed and organized in the State
12 of Virginia.  (Freeney Decl. ¶ 2.)  IKEA's headquarters—which is its principal place
13 of business and the center of its executive and administrative functions—is in the
14 State of Pennsylvania.  (*Id.*)  IKEA is solely owned by IKEA Property, Inc., which is
15 a corporation organized in the State of Delaware, with its corporate and
16 administrative offices and its principal place of business in Conshohocken,
17 Pennsylvania.  (*Id.*)  IKEA North America Services, LLC and IKEA Indirect
18 Material & Services, LLC are subsidiaries of IKEA.  (*Id.*)  IKEA North America
19 Services, LLC is, and at all times relevant to this action was, a Virginia limited
20 liability company.  (*Id.*)  IKEA Indirect Material & Services, LLC is, and at all times
21 relevant to this action was, a Delaware limited liability company.  (*Id.*)  IKEA
22 Indirect Material & Services, LLC and IKEA North America Services, LLC are both
23 headquartered in Conshohocken, Pennsylvania, which is each company's center of
24 direction, control, and coordination.  (*Id.*)  No member or subsidiaries of IKEA are
25 citizens of California.  (*Id.*)

26        33.    For the purposes of federal diversity jurisdiction, IKEA is a citizen of
27 Virginia and Pennsylvania, and Plaintiff is, and for all relevant times was, a
28 California resident.  (Freeney Decl. ¶ 2; Complaint at ¶ 6.)  Therefore, the minimal

diversity requirement of 28 U.S.C. 1332(d) is met in this action because IKEA is a citizen of Virginia and Pennsylvania while Plaintiff is a citizen of California. (*Id.*)

34. The exceptions to CAFA jurisdiction under 28 U.S.C. § 1332(d)(3) and (d)(4) are inapplicable because IKEA is not a citizen of California. As such, the third requirement for CAFA jurisdiction is satisfied.

## V. THE COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S PAGA CLAIM

35. Under 28 U.S.C. § 1367(a), "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

36. Here, Plaintiff's PAGA and class claims concern the same alleged conduct by IKEA and the PAGA claim is accordingly properly within the Court's supplemental jurisdiction. *See Thompson v. Target Corp.*, No. EDCV 16-00839 JGB (MRWx), 2016 U.S. Dist. LEXIS 101363, at *12 (C.D. Cal. Aug. 2, 2016) (concluding that "given that the Court finds it has original jurisdiction over Plaintiff's class claims under CAFA, the Court may exercise supplemental jurisdiction over Plaintiff's PAGA claims.").

37. Moreover, none of the four categories specifically identified in 28 U.S.C. § 1367(c) provide a sufficient basis for the Court to decline to assert supplemental jurisdiction over Plaintiff's PAGA claim. The PAGA claim does not raise "a novel or complex issue of State law" or "substantially predominate[] over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(1), (2). Nor has this Court or the State Court dismissed all causes of action over which this Court has original jurisdiction under CAFA. 28 U.S.C. § 1367(c)(3). Further, there are no other "exceptional circumstances . . . for declining jurisdiction." 28 U.S.C. § 1367(c)(4). The PAGA claim is based entirely on Plaintiff's other claims alleged in the Complaint, and the Court should exercise its

supplemental jurisdiction over the PAGA claim.

## VI. CONCLUSION

38. Because this civil action is between citizens of different states, the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and the putative class contains at least 100 members, IKEA respectfully requests that this Court exercise its removal jurisdiction over the class claims in this action. Moreover, because the Court has original jurisdiction over Plaintiff's class claims under CAFA, IKEA respectfully requests that the Court exercise its supplemental jurisdiction over Plaintiff's remaining PAGA claim.

39. If this Court has a question regarding the propriety of this Notice of Removal, IKEA respectfully requests that the Court issue an Order to Show Cause, so IKEA may submit a more detailed brief and/or explanation outlining the bases for removal.

DATED: February 15, 2019

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: */s/ Lauren M. Cooper*
    DOUGLAS J. FARMER
    LAUREN M. COOPER
    SEAN M. KRAMER

Attorneys for Defendant
IKEA U.S. RETAIL LLC

...

# CERTIFICATE OF SERVICE

I certify that on February 15, 2019, I electronically filed the foregoing DEFENDANT IKEA U.S. RETAIL, LLC'S NOTICE OF REMOVAL OF ACTION PURSUANT TO §§ 1332(D)(2), 1367, 1441, 1446, 1453 and that it is available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: */s/ Lauren M. Cooper*

37293947.4