-

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ALLYZA CAHILIG, on behalf of herself and all others similarly situated,**<br><br>         **Plaintiff,**<br><br>     **v.**<br><br>**IKEA U.S. RETAIL, LLC, and DOES 1 through 100, inclusive,**<br><br>         **Defendants.** | **Case No.: CV 19-01182-CJC(ASx)**<br><br>**ORDER GRANTING UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 45]** |

# I.  INTRODUCTION & BACKGROUND

Plaintiff Allyza Cahilig brings this putative class action against Defendant IKEA U.S. Retail, LLC on behalf of herself and all current and former hourly non-exempt IKEA employees.  (Dkt. 34 [First Amended Complaint, hereinafter "FAC"].)  She asserts that Defendant violated various provisions of the California Labor Code by having a policy of not allowing employees to leave the premises for their breaks.  Specifically, she asserts claims for (1) failure to provide paid rest periods, (2) failure to pay all wages due

on termination, (3) "derivative" failure to provide accurate wage statements, (4) "independent" failure to provide accurate wage statements, (5) civil penalties pursuant to the California Private Attorneys General Act ("PAGA"), and (6) unfair business practices.  On June 20, 2019, the Court denied in substantial part Defendant's motion for judgment on the pleadings.  (Dkt. 17.)

On December 11, 2019, the parties attended a full-day mediation before an experienced mediator, David Rotman.  (Dkt. 45 [Motion, hereinafter "Mot."] at 1, 6.) Following the mediation and continued negotiations, they entered into a settlement agreement.  (*Id*.; Dkt. 45-2 [Declaration of Kevin T. Barnes, hereinafter "Barnes Decl."] Ex. 1 [Joint Stipulation of Class Action and PAGA Settlement and Release of Claims, hereinafter the "Settlement Agreement"].)  The Settlement Agreement creates a common settlement fund of $7.5 million, with about 25% of that amount going to the attorneys and 75% to the class, with Defendant separately paying the employer-side payroll taxes that result from the payments to class members.  (Settlement Agreement.)  Before the Court is Plaintiff's unopposed motion for preliminary approval of the Settlement Agreement. (Mot.; Dkt. 46 [Notice of Non-Opposition].)  For the following reasons, the motion is **GRANTED**.[1]

## II. ANALYSIS

To determine whether preliminary approval of the Settlement Agreement is appropriate, the Court reviews (1) the requirements for class certification, (2) the fairness of the proposed settlement, (3) the attorney fees and incentive awards requested, (4) the

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for June 22, 2020, at 1:30 p.m. is hereby vacated and off calendar.

request for appointment of a settlement administrator, and (5) issues relating to notice of the proposed settlement.

### A.     Class Certification Requirements

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks provisional certification of a class for settlement purposes only.  The proposed settlement class includes "all current and former hourly-paid, non-exempt employees employed by Defendant in California at any time during the Class Period."  (Settlement Agreement § I.F.)  The Class Period is defined as January 10, 2015 through March 31, 2020.  (*Id.* § I.G.)

When a plaintiff seeks conditional class certification for purposes of settlement, the Court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003).  Under Rule 23(a), the plaintiff must show the class is sufficiently numerous, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the class's interests.  Under Rule 23(b), the plaintiff must show that the action falls within one of the three "types" of classes.  Here, Plaintiff seeks certification pursuant to Rule 23(b)(3).  Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

//
//

### 1.      Rule 23(a) Requirements

#### a.      Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered."  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members."  *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015); *see Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473–74 (C.D. Cal. 2012).  Here, numerosity is easily satisfied because Defendant's employment and payroll records show there are approximately 6,400 individuals in the proposed settlement class.  (Mot. at 12; Barnes Decl. ¶ 3.)

#### b.      Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Rather, the plaintiff's claim must depend on a "common contention" that is capable of classwide resolution.  *Id.*  This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

The California Supreme Court has held that "employers . . . must relinquish control over how employees spend their time" during rest periods.  *Augustus v. ABM Sec. Servs.,*

-4-

*Inc.*, 2 Cal. 5th 257, 259 (2016).  Plaintiff claims that Defendant's written rest period policy violates California law because the policy requires employees "to stay on the premises during paid rest breaks," and to take breaks "in either the Staff Café or other designated non-work areas."  (FAC ¶¶ 40, 43.)  Plaintiff contends that Defendant therefore failed to provide lawful paid rest breaks.  (*See id.* ¶ 5 [Summary of Claims].)  She further alleges that Defendant consequently failed to timely pay all wages owed (including premiums for unlawfully withheld rest periods) and provide accurate wage statements.  (*See id.* ¶¶ 5, 43, 50, 56, 58, 70.)

Resolution of the class's claims presents common questions including (1) whether Defendant had and enforced a uniform rest period policy and (2) whether that policy violated California law.  (*See* Barnes Decl. ¶ 4.)  Those questions are central to each class member's claims and their resolution will help determine, "in one stroke," whether Defendant violated the law and if so, the amount of damages the class may obtain.

### c.      Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Here, Plaintiff was subject to the same rest break policy as the rest of the class.  Her injury and her claims are the same as those of the class members.  Accordingly, Plaintiff's claims are "reasonably coextensive" with those of the class.  *See id.*

//

//

//

### d.      Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This factor requires (1) a lack of conflicts of interest between the proposed class and the proposed representative plaintiff, and (2) representation by qualified and competent counsel that will prosecute the action vigorously on behalf of the class.  *Staton*, 327 F.3d at 957.  The concern in the context of a class action settlement is that there is no collusion between the defendant, class counsel, and class representatives to pursue their own interests at the expense of the interests of the class.  *Id.* at 958 n.12.

There is no evidence of a conflict of interest between Plaintiff and the class. Plaintiff's claims are identical to those of the class, and she has every incentive to vigorously pursue those claims.  Nor is there any evidence that Plaintiff's counsel will not adequately represent or protect the interests of the class.  Plaintiff's counsel, Kevin T. Barnes and Gregg Lander of the Law Offices of Kevin T. Barnes, and Raphael A. Katri of the Law Offices of Raphael A. Katri, have extensive experience litigating wage-and-hour class actions.  (*See* Barnes Decl. ¶¶ 13, 15–17; Dkt. 45-3 [Declaration of Raphael A. Katri] ¶ 4.)  Counsel have vigorously prosecuted this matter, leading to the present Settlement Agreement.  The record indicates that they have done so capably and adequately.  For example, they largely defeated Defendant's motion for judgment on the pleadings.  (*See* Dkt. 17 [Order Denying in Substantial Part Defendant's Motion for Judgment on the Pleadings].)

### 2.      Rule 23(b)(3) Requirements

In addition to the requirements of Rule 23(a), Plaintiff must satisfy the requirements of Rule 23(b)(3).  Under Rule 23(b)(3), a plaintiff must demonstrate that

common questions "predominate over any questions affecting only individual members." Although the predominance requirement overlaps with Rule 23(a)(2)'s commonality requirement, it is a more demanding inquiry. *Hanlon*, 150 F.3d at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). The plaintiff must show that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Plaintiff has shown that questions common to the class predominate over any questions affecting only individual members. The central question in this case is whether Defendant's rest break policy was lawful. That question can be resolved using common evidence regarding Defendant's policy for all class members. The collateral questions in this case are whether Defendant paid class members all wages owed and whether it gave them accurate wage statements. These questions can also be resolved using common evidence—including Defendant's time records and pay stubs—for all class members. Indeed, Defendant "agrees that there are sufficient common questions to support creation of a Settlement class." (Barnes Decl. ¶ 4.)

Class actions certified under Rule 23(b)(3) must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts consider four nonexclusive factors in evaluating whether a class action is the superior method for adjudicating a plaintiff's claims: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class, (3) the desirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

The Court finds that proceeding as a class is superior to other methods of resolving the issues in this case.  A class action may be superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  A class action may also be superior when "no realistic alternative" to a class action exists.  *Id.* at 1234–35.  Here, given the common issues presented by all class members, adjudicating these claims on an individual basis for 6,400 employees would be not only extremely inefficient, but also unrealistic.  Additionally, although the Court foresees no management problems from litigating this dispute as a class action, the Supreme Court has held that a district court "need not inquire whether the case, if tried, would present intractable management problems" in a "settlement-only class certification." *Amchem*, 521 U.S. at 620.  Accordingly, Plaintiff's proposed Class is appropriate for provisional certification under Rules 23(a) and 23(b)(3).

## B.      Fairness of the Proposed Settlement

Plaintiff seeks preliminary approval of the Settlement Agreement.  Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, reasonable, and accurate." *Staton*, 327 F.3d at 959 (quoting *Hanlon*, 150 F.3d at 1026).  To determine whether this standard is met, courts consider factors including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *Id.* (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).  At the preliminary approval stage, a full "fairness hearing" is not required.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

Rather, the inquiry is whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.*

### 1.    Class Member Compensation

Having reviewed the arms-length negotiation process and substantive terms of the Settlement Agreement, the Court finds no obvious deficiencies or grounds to doubt its fairness. *See id.* The parties reached a settlement after conducting substantial discovery, motion practice, and a full-day mediation. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." (internal quotation and citations omitted)). Each class member will receive a substantial recovery—the average class member will receive about $820, and the highest settlement payment will be about $2,500. (Mot. at 7.) And there is no evidence of collusion during the parties' settlement negotiations. Indeed, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

The Settlement Agreement also presents a fair compromise in light of the risks and expense of continued litigation. Litigation had reached a stage where the parties had a clear view of the strengths and weaknesses of their positions. Specifically, Defendant tested the merits of Plaintiff's claims by filing a motion for judgment on the pleadings. (*See* Dkt. 17.) The parties also had the benefit of significant discovery (including written discovery and depositions), substantive briefing, and a full-day mediation. With that information, they were able to realistically value Defendant's liability and assess the risk

of moving forward with class certification, motions for summary judgment, and trial. (*See* Barnes Decl. ¶¶ 6–7.)  The $7.5 million settlement amount represents 44% of the realistic exposure in this case.  (Mot. at 10; Barnes Decl. ¶¶ 6–11.)  In light of the significant hurdles to recovery if litigation were to continue, it appears that the Settlement Agreement reflects a fair result.

### 2.     Attorney Fees

The Settlement Agreement also provides for $1,875,000 in attorneys' fees and up to $25,000 in costs, plus approximately $40,000 in claims administration costs.  This amount reflects about 25% of the $7.5 million settlement fund.  The Ninth Circuit has held that 25% of the settlement fund is the "benchmark" for a reasonable fee award, and courts must provide adequate explanation in the record of any "special circumstances" to justify a departure from this benchmark.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent.  That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case." (internal citation omitted)).  Based on the evidence before it, the Court preliminarily approves the proposed attorney fees and costs.  Of course, the Court will expect Plaintiff's counsel to provide detailed evidence to support this award before final approval.

### 3.     Incentive Award

Plaintiff also seeks a $15,000 incentive award to compensate the class representative for her time and efforts on behalf of the class.  Incentive awards are

payments to class representatives for their service to the class in bringing the lawsuit. *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  Such awards "are fairly typical in class action cases" and are discretionary.  *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis removed).  Although they "typically range from $2,000.00 to $10,000.00 . . . [h]igher awards are sometimes given in cases involving much larger settlement amounts." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases); *see In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (explaining that California district courts typically approve incentive awards between $3,000 and $5,000).  In the Ninth Circuit, a $5,000 incentive award is "presumptively reasonable."  *See Bellinghausen*, 306 F.R.D. at 266.

Here, Plaintiff seeks a larger incentive award than what is typical.  However, the Court preliminarily concludes that the amount is reasonable.  Plaintiff brought the issues with Defendant's rest break policy to counsel's attention, consulted with counsel throughout the case, provided documents and had her deposition taken, and prepared for and attended the full-day mediation.  (Barnes Decl. ¶ 18.)  Moreover, the settlement amount here is significant, and the amount of the proposed incentive award is not unprecedented.  *See Sullivan v. Kelly Servs., Inc.*, 2011 WL 13156647, at *1 (N.D. Cal. Sept. 20, 2011) (awarding $15,000 enhancement fee).  Nor is there such a "significant disparity between the incentive award[ ] and the payments to the rest of the class members" that it would create a conflict of interest.  *Radcliffe*, 715 F.3d at 1165.

### 4.    PAGA Payment

The final element of the settlement is a PAGA payment of $50,000, with $37,500 (75% of the $50,000) being paid to the California Labor and Workforce Development Agency, and $12,500 (25% of the $50,0000) being paid to class members as part of the

net settlement amount.  (Settlement Agreement at 28.)  The Court preliminarily finds that the proposed $50,000 carve out appears adequate and fair given the difficulty Plaintiff would have had in recovering the full $14.5 million in PAGA penalties sought here.  (*See* Barnes Decl. ¶ 9.)

### C.    Settlement Administrator

Plaintiff asks the Court to appoint Rust Consulting Inc. ("Rust") as settlement administrator.  The parties have jointly agreed to use Rust as the settlement administrator.  (Mot. at 8.)  Rust appears to have significant experience acting as a settlement administrator, and federal courts in California routinely approve Rust as a class action settlement administrator.  *See*, *e.g.*, *Caput v. NTT Sec. US Inc.*, 2019 WL 3308771, at *7 (C.D. Cal. Apr. 19, 2019); *Brown v. CVS Pharmacy, Inc.*, 2017 WL 3494297, at *2 (C.D. Cal. Apr. 24, 2017).  Accordingly, the Court appoints Rust as Settlement Administrator.  Any award of administrator expenses will need to be substantiated with detailed evidence.

### D.    Notice of the Proposed Settlement

Finally, Plaintiff seeks approval of the proposed manner and form of the notice that will be sent to the class members.  For Rule 23(b)(3) classes, courts "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The Court finds the proposed manner of notice is adequate.  Plaintiff proposes a notice protocol centering on direct mail.  Following preliminary approval, Defendant will provide Rust a list of class members.  (Dkt. 45-4 [Proposed Order] ¶ 7.)  Rust will run the

names and addresses from this list through the National Change of Address database, and update its information accordingly.  (*Id.*)  Rust will then mail a notice to each class member, and also perform skip traces on any notice package returned as undeliverable.  (*Id*.)  The class notice will direct the class members to a settlement website that contains the class notice, Settlement Agreement, and claim form.  (*See* Dkt. 45-2 [Proposed Notice].)

The form of notice also meets the requirements of Rule 23(c)(2)(B).  Notice to class members must "clearly and concisely state, in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that the class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  Here, the proposed notice provides clear information about the definition of the class, the nature of the action, a summary of the terms of the proposed settlement, the process for objecting to the settlement, and the consequences of inaction.  (*See* Dkt. 45-2 Ex. A.)  The notice even includes the individual employee's estimated settlement payment on the first page.  (*Id.* at 1.)  The notice will also provide specific details regarding the date, time, and place of the final approval hearing and inform class members that they may enter an appearance.  (*See id*.)

## III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** both provisional certification of the class for settlement purposes and preliminary approval of the Settlement Agreement.  The Court hereby **APPOINTS** Plaintiff Allyza Cahilig as Class Representative, Kevin T. Barnes and Gregg Lander of the Law Offices of Kevin T. Barnes, and Raphael A. Katri

of the Law Offices of Raphael A. Katri as Class Counsel, and Rust Consulting Inc. as Settlement Administrator.  The Court also **APPROVES** the proposed notice and orders that it be disseminated to the class as provided in the Settlement Agreement.  The final approval hearing shall be held on **Monday, October 1, 2020, at 1:30 p.m.**


DATED:      June 17, 2020

_____

CORMAC J. CARNEY

CHIEF UNITED STATES DISTRICT JUDGE