FILED
CLERK, U.S. DISTRICT COURT
10/1/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CW___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLYZA CAHILIG, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IKEA U.S. RETAIL, LLC, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: CV 19-01182-CJC(ASx)<br><br>ORDER GRANTING IN SUBSTANTIAL PART PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 50] |

## I. INTRODUCTION & BACKGROUND

Plaintiff Allyza Cahilig brings this putative class action against Defendant IKEA U.S. Retail, LLC on behalf of herself and all current and former hourly non-exempt IKEA employees. (Dkt. 34 [First Amended Complaint, hereinafter "FAC"].) She asserts that Defendant violated various provisions of the California Labor Code by having a policy of not allowing employees to leave the premises for their breaks. Specifically, she asserts claims for (1) failure to provide paid rest periods, (2) failure to pay all wages due

on termination, (3) "derivative" failure to provide accurate wage statements, (4) "independent" failure to provide accurate wage statements, (5) civil penalties under California's Private Attorneys General Act ("PAGA"), and (6) unfair business practices.

After substantial discovery and motion practice, a full-day mediation before an experienced mediator, and continued negotiations, the parties entered into a settlement agreement. (Dkt. 45 at 1, 6; Dkt. 45-2, Ex. 1 [Joint Stipulation of Class Action and PAGA Settlement and Release of Claims, hereinafter "Settlement Agreement"].) The Settlement Agreement creates a common settlement fund of $7.5 million, with about 25% of that amount going to the attorneys and 75% to the class, with Defendant separately paying the employer-side payroll taxes that result from the payments to class members.

The Court granted preliminary approval of the Settlement Agreement on June 17, 2020, and appointed Rust Consulting Inc. ("Rust") as settlement administrator. (Dkt. 48.) Rust then mailed notices to 6,850 class members and set up a settlement hotline, fax number, and mailing address. (Dkt. 50-2, Ex. 1 [Declaration of Abigail Schwartz [hereinafter "Schwartz Decl."] ¶¶ 4–10.) The deadline to opt-out or object has passed, and only 7 people have opted out, and no one has objected. (Dkt. 53, Ex. 1 [Supplemental Declaration of Abigail Schwartz, hereinafter "Supp. Schwartz Decl."] ¶¶ 10, 14, 15.) Plaintiff now asks the court to grant final approval of the settlement and the requested attorney fees, costs, and incentive awards. (Dkt. 50 [hereinafter "Mot."].) For the following reasons, the motion is **GRANTED IN SUBSTANTIAL PART**.

### III. DISCUSSION

In assessing whether to grant final approval, the Court analyzes (1) the propriety of granting class certification for purposes of settlement, (2) the fairness of the settlement, and (3) the reasonableness of the fees, costs, and incentive award requested.

### A. Class Certification

A plaintiff seeking class certification must satisfy two sets of requirements under Federal Rule of Civil Procedure 23: (1) Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy, and (2) the requirement that the action fall within one of the three "types" of classes described in Rule 23(b)'s subsections. In this case, Plaintiff seeks certification under Rule 23(b)(3), which allows certification if a court "finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Court previously concluded that Plaintiff presented sufficient evidence to show that the proposed class satisfies the Rule 23(a) and (b)(3) requirements. (*See* Dkt. 48 at 3–8.) Having reviewed those requirements again, the Court adopts its prior analysis regarding class certification and grants certification of the proposed class for purposes of settlement only.

### B. Fairness of the Settlement

The Court next evaluates the fairness of the settlement. Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), a settlement of class claims requires court approval. Fed. R. Civ. P. 23(e). This is because "[i]ncentives inhere in class-action settlement negotiations that can, unless checked through careful district court review of the resulting settlement, result in a decree in which the rights of class members, including the named plaintiffs, may not be given due regard by the negotiating parties." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (alterations and quotations omitted).

Courts must therefore "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citation and quotation marks omitted). In considering whether this standard is met, courts consider various factors, including the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *Id.* (citation and quotation marks omitted). Having considered the *Staton* factors, the Court finds the Settlement Agreement fundamentally fair and reasonable.

### 1. Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

The strength of Plaintiff's case, when balanced against the risks and obstacles inherent in continued litigation, weighs in favor of granting final approval of the Settlement Agreement. The parties did not settle until after Plaintiff survived a motion for judgment on the pleadings and the parties engaged in substantial discovery, including written discovery, two depositions of Defendant under Federal Rule of Civil Procedure 30(b)(6), and Plaintiff's deposition. (*See* Dkt. 17 [Order Denying in Substantial Part Defendant's Motion for Judgment on the Pleadings]; Mot. at 7–8.) Plaintiff obtained in discovery information about the number of class members, the number of work weeks, and other necessary information to create a damage exposure analysis, which Plaintiff's expert reviewed before the mediation. (Mot. at 7.) The parties then conducted a full-day mediation with an experienced mediator, and continued negotiating to reach the settlement structure now before the Court. (*Id.* at 6.)

      The Settlement Agreement presents a fair compromise in light of the risks and expense of continued litigation. If Plaintiff were to succeed in certifying a class and then prevail on the merits, she might recover damages substantially higher than those reflected in the Settlement Agreement. However, Plaintiff acknowledges that her and the class's path to recovery was not without significant risk. (Mot. at 8–9.) Continued litigation would have involved considerable obstacles and costs, including summary judgment, trial, and possible appeal. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041–42 (N.D. Cal. 2008) (discussing how a class action settlement offered an "immediate and certain award" in light of significant obstacles posed through continued litigation); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement."). Moreover, the involvement of an experienced mediator following significant discovery, while not conclusive, is a helpful barometer for the Court because it indicates that the settlement agreement was non-collusive. *See Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). This factor weighs in favor of approving the settlement.

### 2. Amount Offered in Settlement

      The Court also finds that the amount offered is fair and reasonable, especially in light of the preceding discussion regarding the risks, obstacles, and costs of further litigation. Defendant will pay $7.5 million, and class members will receive an average of over $800, with the highest payment reaching nearly $2,500. (Supp. Schwartz Decl. ¶ 17; Mot. at 9–10.) These figures are substantial. Moreover, the amount offered in settlement provides an immediate and tangible benefit to the Class and eliminates the risk that they could receive less than that amount, or nothing at all, if the litigation continued.

In the Court's view, the amount offered in settlement is reasonable. This factor weighs in favor of approving the settlement.

### 3. Extent of Discovery Completed, Stage of Proceedings, and Experience and Views of Counsel

Additionally, the parties here gathered enough information through substantial discovery and litigation to make an informed decision about whether the terms of this Settlement Agreement were fair. Where the "parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approving the settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal citation and quotation marks omitted). Indeed, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 889 (C.D. Cal. 2016).

As explained, the parties conducted substantial discovery, including written discovery, two Rule 30(b)(6) depositions of Defendant, and Plaintiff's deposition. (Mot. at 7–8.) They also engaged in substantive motion practice. (*See* Dkt. 17.) Plaintiff's counsel are experienced class-action litigators, and the parties participated in a full day mediation session. (*See* Mot. at 10–12.) These facts, among others, make the Court confident that the parties were able to realistically value Defendant's liability and assess the risks of continuing to litigate. In short, the Court is satisfied that the parties reached the Settlement Agreement after developing a full and fair understanding of the merits and risks of the case, and negotiating at arm's length. This factor weighs in favor of approving the settlement.

//

//

### 4. Reaction of Class Members

Following the Court's preliminary approval, Rust mailed notice to all 6,850 class members. (Supp. Schwartz Decl. ¶ 10.) The deadline for class members to opt-out or object was September 6, 2020. (*Id.*) Only 7 people chose to opt out of the settlement, and none objected. (*Id.* ¶¶ 14–15.) Class members' reaction to the settlement has therefore been very positive, and this factor favors final approval. *See Mego Fin. Corp.*, 213 F.3d at 459 (concluding that this factor supported conclusion that district court did not abuse its discretion in approving settlement where "[o]nly one of the 5,400 potential class members to whom notice of the proposed Settlement and Plan of Distribution was sent chose to opt-out of the class"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").

After considering the *Staton* factors, the Court finds the Settlement Agreement fair, adequate, and reasonable.

### 5. Rule 23(e)(2) Factors

The Court must also find the settlement "fair, reasonable, and adequate after considering whether:
  (A) the class representatives and class counsel adequately represented the class;
  (B) the proposal was negotiated at arm's length;
  (C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

 (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). There is substantial overlap between these factors and the *Staton* factors, so the Court does not repeat itself here. The Court has considered these factors and finds that the settlement is fair, reasonable, and adequate.

### C. Attorney Fees and Costs, and Plaintiff's Incentive Award

Plaintiff's counsel also seek final approval of their requests for $1,875,000 in attorney fees, $22,706.94 in costs, $39,555 for Rust's costs, a $15,000 incentive payment to the class representative, and a $50,000 PAGA payment. (Fee Mot. at 1.)

#### 1. Attorney Fees and Costs

District courts have a duty to determine the fairness of attorney fees in a class action settlement. *See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999). The Settlement Agreement provides that counsel's fees will be paid from the common settlement fund. When a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to calculate attorney fees. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011). The amount of fees awarded rests ultimately in the court's sound discretion. *Evans v. Jeff D.*, 475 U.S. 717, 736 n.26 (1986), *superseded by statute on other grounds*.

The Court applies the percentage-of-recovery method here. The Ninth Circuit has held that 25% of the fund is the "benchmark" for a reasonable fee award, and courts must provide adequate explanation in the record of any "special circumstances" to justify a departure from this benchmark. *In re Bluetooth*, 654 F.3d at 942–43; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent. That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case." (internal citation omitted)).

Plaintiff's counsel seek $1,875,000 in attorney fees—25% of the $7,500,000 settlement fund. The Court finds that a 25% award here is both fair and reasonable in light of the results achieved, counsel's efforts in litigating this action, and the risks inherent in continued litigation. It is also consistent with fee awards for common-fund cases in this district. *See In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897–98 (9th Cir. 2017) (affirming 25% benchmark fee award where "[t]here were no special circumstances here indicating that the 25% benchmark award was either too small or too large"); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *5 (C.D. Cal. Oct. 24, 2017) (awarding 25% of a $7 million settlement fund, or $1,750,000).

Plaintiff's counsel also provide the Court with the information necessary to perform a "lodestar cross-check." Courts commonly perform a lodestar cross-check to assess the reasonableness of the percentage award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyer's investment of time in the litigation, provides a check on the reasonableness of the percentage award."); *see also In re Bluetooth*, 654 F.3d at 943 (encouraging a "comparison between the lodestar amount and a reasonable percentage award"). Specifically, Plaintiff's counsel state their lodestar fee is $646,539 based on their hours worked and reasonable hourly rates. (Mot. at 18.) They contend that a multiplier of 2.9

(which would bring the fee to the amount sought using the percentage-of-recovery method) is reasonable because they took the case on contingency and achieved an excellent result. Though this multiplier is significant, the Court agrees. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming 25% fee recovery, which was supported by lodestar cross-check with a multipier of 3.65, and explaining that that multiple "was within the range of multipliers applied in common fund cases"); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (affirming 20% fee recovery, which was supported by lodestar cross-check with multiplier of 3.66).

However, the Court makes one small adjustment to the fees sought. Specifically, the Court will calculate the 25% attorney fee award *after* deductions for counsel's and Rust's costs. Calculating a percentage fee and then deducting expenses, as counsel urges, has the unusual effect of reimbursing counsel for their expenses—like transportation, hotels, deposition costs, and photocopying—and then awarding them 25% of their expenses as a fee. There is no principled reason to calculate a fee in this manner. *See Kmiec v. Powerwave Techs., Inc.*, 2016 WL 5938709, at *5 (C.D. Cal. July 11, 2016) (calculating attorneys' fee from net settlement award after deducting costs and administrative expenses); *Kanawi v. Bechtel Corp.*, 2011 WL 782244, at *1 (N.D. Cal. Mar. 1, 2011) (same). *Cf. In re Apple iPhone/iPad Warranty Litig.*, 40 F. Supp. 3d 1176, 1182 (N.D. Cal. 2014) (calculating a 25% fee from a net settlement fund after deducting administration expenses).

The Court finds counsel's request for $22,706.94 in litigation costs and $39,555 in Rust's costs reasonable and well-supported by the evidence presented in their motion. Deducting these costs from the $7,500,000 settlement amount, and taking 25% of that amount, the Court awards Plaintiff's counsel $1,859,435 in attorney fees.

### 2. Plaintiff's Incentive Award

Plaintiff seeks a $15,000 incentive award to compensate her for the time and effort she spent as class representative. Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit. *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Such awards "are fairly typical in class action cases" and are discretionary. *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis removed). In the Ninth Circuit, a $5,000 incentive award is "presumptively reasonable." *See Bellinghausen*, 306 F.R.D. at 266. When evaluating the reasonableness of an incentive award, courts consider several factors, including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions," and the time the plaintiff spent pursing the litigation. *Staton*, 327 F.3d at 977 (citation and quotation marks omitted).

Plaintiff seeks a larger incentive award than what is typical. Incentive awards "typically range from $2,000.00 to $10,000.00." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases); *see In re Toys R Us-Del., Inc.- Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (explaining that California district courts typically approve incentive awards between $3,000 and $5,000). Plaintiff and her counsel contend that this amount is reasonable because Plaintiff spent about 50 hours on this case, assisting her attorneys with investigation and discovery, preparing for and attending her full-day deposition, and preparing for and attending the full-day mediation. (Dkt. 50-4 [Declaration of Allyza Cahilig] ¶ 10.) She notes that it also "caused [her] significant stress and grief," as it was "often in the back of her mind." (*Id.* ¶ 13.) However, the Court cannot conclude that this evidence justifies the award of an incentive award of three times the typical award. Accordingly, the Court will approve a $10,000 incentive award, which is the high end of

what is typical.

### 3. PAGA Payment

The final element of the Settlement Agreement is a PAGA payment of $50,000, with $37,500 (75% of the $50,000) being paid to the California Labor and Workforce Development Agency, and $12,500 (25% of the $50,0000) being paid to class members as part of the net settlement amount. (Settlement Agreement at 28.) The Court preliminarily found that the proposed $50,000 carve out appears adequate and fair given the difficulty Plaintiff would have had in recovering the full $14.5 million in PAGA penalties sought here. (Dkt. 48 at 11–12.) Having reviewed the proposed payment again, the Court approves this amount.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for final approval of the Settlement Agreement is **GRANTED IN SUBSTANTIAL PART**. Plaintiff's counsel are awarded $1,859,435 in attorney fees, $22,706.94 in costs, Rust is awarded $39,555 in costs, and Plaintiff Allyza Cahilig is awarded $10,000 for her service as class representative. The Court also approves the $50,000 PAGA payment.

DATED: October 1, 2020

HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE